

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 30, 2018**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JERRY ARTHO, | § | Case No.:  15-20046-RLJ-12 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| JERRY ARTHO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 17-02002 |
| | § | |
| HAPPY STATE BANK, PANHANDLE | § | |
| ENTERPRISES, INC., OPR H2O, LLC, | § | |
| SHANNON T. BURDETT, and OUTPOST | § | |
| RANCHES, LTD., | § | |
| | § | |
| Defendants. | § | |
| | § | |

1

## **MEMORANDUM OPINION**

Before the Court are separate but related motions to dismiss this adversary proceeding filed by Defendants Happy State Bank (HSB); Shannon T. Burdett; OPR H2O, LLC (OPR H2O); Outpost Ranches, Ltd. (Outpost); and Panhandle Enterprises, Inc. (Panhandle) (collectively, Defendants). The complaint initiating this adversary, filed by Jerry Artho (dba Artho Cattle) on February 8, 2017, alleges several causes of action against the various Defendants and seeks damages in an unliquidated amount.[1] As addressed below, this proceeding is related to Artho's chapter 12 bankruptcy case and, in particular, his confirmed chapter 12 plan.

The Court asked the parties to address the Court's jurisdiction and authority to hear and decide this suit that alleges claims that arise out of both alleged pre-filing (of the bankruptcy) and post-confirmation (of the chapter 12 plan) misconduct by the Defendants. After reviewing the parties' briefs on the issues and considering the alleged facts and causes of action, the Court concludes it does have jurisdiction under 28 U.S.C. §§ 1334(b) and 157. All parties consent to the Court's hearing and deciding the causes raised here. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948–49 (2015); *see also Estate of Frances Maddox v. O'Cheskey (In re Am. Hous. Found.)*, No. 15-02000, 2015 WL 5781396, at *2 (Bankr. N.D. Tex. Sept. 30, 2015).

### **Background**

On March 2, 2015, Artho sought bankruptcy relief under chapter 12 of the Bankruptcy Code.[2] An amended chapter 12 plan of reorganization and motion for valuation (the Plan) was filed on June 17, 2015.[3]

---

[1] Doc. No. 1. All "Doc. No." references herein are to the present adversary proceeding, unless otherwise indicated.
[2] Case No. 15-20046, Doc. No. 1.
[3] Case No. 15-20046, Doc. No. 70.

Relevant to this pending litigation, the terms of the Plan allowed for a secured claim in favor of HSB in the amount of $1,534,185 as of the date the petition was filed.[4] To pay on HSB's secured claim, and the claims of other creditors, the Plan called for a sale of all of Artho's real estate, farm machinery, and equipment free and clear of all interests, liens, and encumbrances.[5] The sale was to be conducted by public auction within 60 days after the Court's entry of a confirmation order, whereby the order would also approve employment of Higgenbotham Auctioneers International, Ltd. to conduct the auction.[6]

In addition, the Plan reserves claims and causes of action, generally and specifically. In general, the Plan reserves,

> without limitation, all bankruptcy causes of action, such as claims for fraudulent conveyances, preferences, equitable subordination, declaratory judgments, suits to determine the nature, extent, validity, and priority of liens and security interests, or others provided under the provisions of the Bankruptcy Code, as well as prepetition claims such as claims for breach of contract, breach of fiduciary duty, lender liability, fraud, trespass to try title, and others.[7]

The Plan also makes provision for specific claims against HSB. Included with that provision are facts and circumstances for which Artho contends the estate maintains its claims against HSB.[8] The alleged facts, while not identical, are similar to those alleged in Artho's complaint against HSB.[9] The Plan asserts that the alleged facts, if true, "could nullify the validity of the liens asserted by bank . . . and also give cause for the award of a judgment against the bank and others acting in concert . . . ."[10] The Plan was confirmed on June 19, 2015.[11]

---

[4] Case No. 15-20046, Doc. No. 70 at 5. Mr. Artho's Plan valued the property for which HSB's claim was secured to be in excess of $5,500,000. *Id.*
[5] *Id.* at 6.
[6] *Id.* at 6, 8.
[7] *Id.* at 19.
[8] *Id*. at 19–20.
[9] Doc. No. 1.
[10] Case No. 15-20046, Doc. No. 70 at 20.
[11] Case No. 15-20046, Doc. No. 71.

On September 3, 2015, Artho filed his Debtor's Report of Sale of Personal Property, confirming that the debtor's real estate, farm machinery, and equipment were sold at an auction held on August 14 and 15, 2015.[12] The Report of Sale of Personal Property reflected a net of $41,388.45 to Artho on account of the sale of his farm machinery and equipment.[13] Artho separately filed the Debtor's Report of Sale of Real Property on October 6, 2015.[14] The Report of Sale of Real Property reflected total dollars received from the sale of $3,632,358.95.[15] From those funds, distributions were made to secured creditors, including HSB, and for fees of professionals; $99,411.89 was turned over to Artho; the remaining funds from the sales of real and personal property were deposited in Artho's counsel's trust account to pay unsecured creditors.[16] Unlike the Report of Sale of Personal Property, the Report of Sale of Real Property does not contain information about the purchasers of the real estate tracts. By the Court's order, entered November 6, 2015, the Report of Sale of Real Property was approved, including the distributions contained in the referenced report.[17]

### A.

Artho filed an amended complaint on May 31, 2017.[18] He alleges six causes of action against HSB, four of which are also alleged against the other named defendants.[19] The causes of action against HSB are: (1) fraud by false promises; (2) civil conspiracy to commit fraud by false promises; (3) duress; (4) civil conspiracy to commit duress; (5) civil conspiracy to violate 18

---

[12] Case No. 15-20046, Doc. No. 83.
[13] *Id.*
[14] Case No. 15-20046, Doc. No. 86.
[15] *Id.*
[16] *Id.* at 3.
[17] Case No. 15-20046, Doc. No. 93.
[18] Doc. No. 28
[19] *Id.*

U.S.C. § 152(5); and (6) conspiracy to violate 18 U.S.C. § 1962(b).[20] Artho asserts the four conspiracy-based causes against the other defendants, as well.[21]

In support of these claims, Artho alleges that HSB had promised him additional time to conduct an auction of certain assets, the proceeds of which would pay HSB's loans.[22] The auction was to occur in April 2015 and was necessary, Artho says, because he was not able to secure financing to pay the HSB loans otherwise.[23] Relatedly, Artho contends that he was not able to secure financing from other lenders or otherwise sell his assets because of HSB's interference in the process.[24] Artho says he relied on the alleged promise made by HSB to allow him time to hold a private auction conducted by an auctioneering company that would publicize and market the assets available for auction.[25]

Artho contends, however, that prior to the planned April 2015 auction, HSB posted all of Artho's property for foreclosure in February 2015 for a foreclosure sale in March 2015.[26] The pending foreclosure caused Artho to seek relief in the bankruptcy Court under chapter 12.[27]

As stated, the terms of Artho's chapter 12 Plan provided for an auction of his property, farm equipment, and machinery. At the bankruptcy auction, Outpost was the successful bidder on two tracts of Artho's real property.[28] The significance of Outpost's purchase of the two tracts is, Artho alleges, their proximity to other real property owned by Outpost and their having new

---

[20] *Id.*
[21] *Id.*
[22] *Id.* at 11.
[23] *Id.* at 9–11.
[24] *Id.* at 9–10.
[25] *Id.* at 11.
[26] *Id.* at 12.
[27] *Id.* at 14.
[28] *Id.* at 17. The two tracts purchased by Outpost were identified as "Star West" and "Artho Homestead" and were two of the ten tracts sold at the auction.

water wells that could benefit Outpost's land.[29]  Artho contends that the Defendants sought to acquire these tracts at below-market prices because of their value to the business operations of each Defendant.[30]  Artho alleges that HSB sought information related to the production quantities of the newly completed water wells and with this information decided that portions of Artho's land would be advantageous to the other defendants.  Artho alleges that the Defendants, by their agents, intimidated other "good-faith bidders" at the auction to help secure the identified properties.[31]

Despite an alleged fair market value of more than $15,000,000, all of Artho's auctioned property sold for $3,648,528.95.[32]  Artho claims that but for the actions of the Defendants—the false promise, the impending foreclosure, and the unlawful conduct at the bankruptcy auction—he could have refinanced the indebtedness owed to HSB or otherwise acquired the funds necessary to pay such indebtedness.[33]

## B.

By its motion to dismiss, HSB asserts that Artho's complaint fails to properly allege subject matter jurisdiction as required by Rule 12(b)(1), to state a claim upon which relief may be granted under Rule 12(b)(6), and to comply with Rule 9(b) for allegations of fraud.[34]  Particularly, HSB says that Artho lacks standing to prosecute claims that were not explicitly reserved in the confirmed chapter 12 Plan and that he lacks standing to assert a claim under 18

---

[29] *Id.* at 15.  The two Santa Rosa water wells were completed on the "Artho 1/4" and "Double A" tracts of land.  *Id.* at 5.

[30] The structure of ownership regarding each entity named as a Defendant is instructive.  Thomas Burdett is Shannon Burdett's father.  Thomas Burdett is a member of the Board of Directors of HSB.  Together, both Thomas and Shannon Burdett manage OPR H2O.  Panhandle was incorporated by Thomas and Shannon Burdett, and Panhandle is the general partner of Outpost.

[31] Doc. No. 28 at 16.

[32] *Id.* at 17.

[33] *Id.* at 18.

[34] Doc. No. 41.  Additionally, the motion requests judgment on the pleadings under Rule 12(c).  All rule references are to the Federal Rules of Civil Procedure unless otherwise indicated.

U.S.C. § 152(5), which is a criminal statute without a private remedy.[35]  HSB's motion contends that the allegations of Artho's complaint are not plausible and are nothing more than conclusory statements.[36]  Summarily, HSB seeks dismissal of Artho's complaint, and of specific causes, for the following additional reasons: (1) the complaint does not plead facts with particularity as required by Rule 9(b); (2) the statute of frauds applies to bar claims; (3) the conspiracy claims are barred by the statute of limitations; and (4) the causes alleging duress are barred by res judicata and those related to the bankruptcy auction were waived upon entry of the Court's order approving the sale.[37]

Defendants Shannon T. Burdett, Outpost, OPR H2O, and Panhandle raise similar arguments by their joint motion to dismiss Artho's complaint.[38]  They challenge Artho's standing to pursue claims not reserved in the confirmed chapter 12 Plan, the plausibility of the allegations, and compliance with Rule 9(b).[39]

Artho filed his responses and briefs opposing the motions to dismiss.[40]  The Court heard oral argument on September 15, 2017, at which time it asked the parties to brief the issue of whether the Court had jurisdiction and authority to hear and decide the case.[41]  After receipt of the parties' briefs on jurisdiction, the Court took the matter under advisement.

## Analysis

### A.

As a preliminary matter, the Court finds that it is necessary and appropriate to look beyond the pleadings offered here to the filings made in Artho's bankruptcy case.  In their

---

[35] *Id.* at 1.
[36] *Id.* at 2.
[37] *Id.* at 3–6.
[38] Doc. No. 43.
[39] *Id.* at 2–3.
[40] Doc. Nos. 53, 54.
[41] Counsel timely submitted briefs.  Doc. Nos. 62, 66, & 67.

motions to dismiss, each of the Defendants make identical requests that the Court take judicial notice "of the filings, claims filed, pleadings, and orders in the main bankruptcy case (Case[] No. 15-20046-rlj-12)."[42] In support of this request, the Defendants rely on *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), which states that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Artho, who does not directly respond to the Defendants' requests for judicial notice, states that

> [t]he court may . . . consider matters that are outside the pleadings if those matters are matters of public record. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). The Fifth Circuit has also indicated that the court may consider documents attached to the motion to dismiss, if they are referred to in the complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,498[– 99] (5th Cir. 2000).[43]

Artho did not attach any documents to his complaint, and the Defendants did not attach any documents to their motions to dismiss. Nonetheless, the Court finds that the filings made in Artho's bankruptcy case are matters of public record, or they are referred to in Artho's complaint and are central to Artho's claims against the Defendants. *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409–10 (5th Cir. 2013) (finding it appropriate that the lower court took into account public records and prior court proceedings in deciding a Rule 12(b)(6) motion); *Inwood Nat'l Bank v. Holcomb (In re Holcomb)*, No. 05-3077-BJH, 2005 WL 6443634, at *3 (Bankr. N.D. Tex. Sept. 1, 2005) (taking judicial notice of documents in public record and the debtor's bankruptcy schedules to decide motion to dismiss for failure to state a claim). The Court therefore considers the filings in Artho's bankruptcy case.

---

[42] Doc. Nos. 41, 43.
[43] Doc. No. 53 at 7.

**B.**

The Defendants' 12(b)(1) motion is a facial attack of the allegations made by Artho's amended complaint. If a 12(b)(1) motion challenges whether the complaint alleges sufficient facts upon which subject matter jurisdiction can be based, a court can dismiss such claim based on the complaint alone. *See Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008). In a facial attack, the court accepts all material allegations in the complaint as true and construes them in the light most favorable to the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The court does not look beyond the allegations of the complaint. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief. A Rule 12(b)(6) motion is appropriate if the plaintiff has not provided fair notice of his claim with factual allegations that, when accepted as true, are plausible and not merely speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Motions to dismiss for failure to state a claim are generally viewed with disfavor. *Collins*, 224 F.3d at 498.

A party must also comply with Rule 9(b) when alleging fraud.[44] Rule 9(b) provides that the party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires a showing of the "who, what, when, where, and how of the alleged fraud." *United States* ex rel. *Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *United States* ex rel. *Steury v. Cardinal Health, Inc. (Steury I)*, 625 F.3d 262, 266

---

[44] Rule 9 is made applicable to the instant adversary proceeding by Bankruptcy Rule 7009.

(5th Cir. 2010)) (internal quotations omitted). The defendant's state of mind, however, may be alleged generally. *See Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994); Fed. R. Civ. P. 9(b) ("[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

"The amount of particularity required for pleading fraud differs from case to case." *Chau v. Aviva Life & Annuity Co.*, No. 3:09-CV-2305-B, 2011 WL 1990446, at *3 (N.D. Tex. May 20, 2011) (citations omitted). When suing multiple defendants, the "plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud." *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998) (quoting *In re Silicon Graphics, Inc. Secs. Litig.*, 970 F. Supp. 746, 752 (N.D. Cal. 1997)) (internal quotations omitted).

## C.

### *(1) Reservation of Claims in the Confirmed Chapter 12 Plan*

The Defendants contend that Artho failed to specifically reserve in his confirmed chapter 12 Plan the claims alleged against them in the amended complaint. First, unlike chapter 11, there is no such requirement in chapter 12.[45] Chapter 12 is different from chapter 11; chapter 12 plans are not subject to the disclosure and voting requirements of chapter 11 plans, wherein the purpose of claim reservation is fulfilled.[46] Second, Artho did reserve certain claims in his chapter 12 Plan against HSB.

---

[45] *Compare* 11 U.S.C. § 1123(b)(3)(B) (allowing retention and enforcement of claims by the debtor); *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011) (requiring specific and unequivocal language in the plan to adequately retain claims of the debtor that existed prior to confirmation of the plan), *with* 11 U.S.C. § 1222 (providing the necessary and discretionary contents of a chapter 12 plan). All section references herein refer to Title 11 of the United States Code unless otherwise indicated.

[46] "Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it . . . ." *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008).

Of significance, though Artho reserved claims in his chapter 12 Plan, he did not list any claims against the Defendants in his schedule of assets.[47] But he alleges facts here that, taken as true, would constitute pre-petition misconduct by, and claims against, the Defendants. Such failure by Artho to include such claims as unliquidated and contingent amounts in his schedule of assets could jeopardize his ability to bring such causes post-bankruptcy. *See ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 958 (5th Cir. 2017); *In re Hazlewood*, 570 B.R. 557, 560–61 (Bankr. N.D. Tex. 2017). But Artho's disclosure and reservation of such claims *in his chapter 12 Plan* is sufficient to avoid his being estopped from bringing the causes of action that, according to the allegations, arose pre-petition.[48]

In addition, the Bankruptcy Code necessitates the conclusion that Artho has standing to prosecute both his pre- and *post-petition* claims. Section 1207(a)(1) defines property of the estate to include property that "the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . , whichever occurs first." A chapter 12 debtor's cause of action that arises post-petition is thus estate property. *See In re Wilson*, 555 B.R. 547, 550 (Bankr. W.D. La. 2016).[49] And upon confirmation of a chapter 12 plan, estate property becomes property *of the debtor*. § 1227(b).

---

[47] Case No. 15-20046, Doc. No. 17.

[48]
> This circuit has not adopted any firm rules regarding the amount of disclosure required beyond the guiding principle that "the integrity of the bankruptcy system depends on full and honest disclosure" by debtors and that "it is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible."

*ASARCO*, 858 F.3d at 958 (quoting *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999)) (affirming the district court's denial of an estoppel argument in favor of the debtor when its disclosures presented conflicting information related to a suit on account of a partnership interest).

[49] Although *Wilson* and the previously cited *Hazlewood* opinion address a chapter 13 debtor's estate, the provisions of § 1207(a)(1) and § 1306(a)(1) are practically identical.

The Defendants' contention that Artho's claims should be dismissed because he lacks standing to assert claims not reserved in his chapter 12 Plan is without merit.

### *(2) Statute of Frauds: Texas Business & Commerce Code § 26.02*

Under Texas law, an oral promise that modifies the terms of an existing loan agreement that exceeds $50,000 in value is not enforceable unless such promise is in writing and signed by the party against whom enforcement of the promise is sought. Tex. Bus. & Com. Code § 26.02(a)–(b) ("Statute of Frauds"). Agreements that are subject to the requirements of the Statute of Frauds are not enforceable if the financial institution does not give conspicuous notice to the debtor that all rights and obligations of the parties are determined by the written loan agreement. *Id*. at § 26.02(e).

In an analogous case, the Southern District of Texas concluded that an oral promise not to foreclose, which modified an underlying mortgage agreement's foreclosure terms, was not enforceable unless such oral promise complied with the Statute of Frauds. *Stolts v. Wells Fargo Bank, NA*, 31 F. Supp. 3d 876, 881 n.3 (S.D. Tex. 2014); *see also Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 571 (S.D. Tex. 2012) ("The statute of frauds bars and makes unenforceable oral modifications to a loan agreement under [Tex. Bus. & Com. Code] § 26.02 unless they fall within an exception to the statute of frauds or do not 'materially alter the obligations imposed by the original contract.'") (citation omitted). In *Stolts*, the plaintiff argued that Wells Fargo made oral promises not to foreclose against her home while it reviewed a modification to her existing loan. *Stolts*, 31 F. Supp. 3d at 878. Wells Fargo countered that it never received the paperwork necessary to review a proposed loan modification and proceeded with foreclosure under the terms of the loan agreement. *Id.* at 879. Regardless of the veracity of these facts, the court concluded that any violation of the oral promise not to foreclose must fail as

12

a matter of law because such promise was not in writing and signed by Wells Fargo. *Id.* at 881 n.3. An attempt to modify and enforce the terms of an existing agreement, for which the Statute of Frauds applies, must also comply with Tex. Bus. & Com. Code § 26.02. *See generally Milton v. U.S. Bank Nat'l Ass'n,* 508 F. App'x 326, 328–29 (5th Cir. 2013) ("An agreement to delay foreclosure is subject to the Texas statute of frauds, and, accordingly, must be in writing to be enforceable.").

Artho's underlying loan agreements are subject to the Statute of Frauds as they exceed $50,000 in value.[50] The existence, therefore, of an oral promise made by HSB not to foreclose before a particular date that was beyond the loan maturity date in the promissory notes must be evidenced by a writing and signed by HSB. Absent such signed writing, any claim by Artho that he was defrauded by HSB's false promise fails as a matter of law.

By Artho's response to the motions to dismiss, he challenges, for the first time, the authenticity of his signature on the related loan documents.[51] This is not raised by his complaint. The Court therefore need not address this issue. Besides, this is inconsistent with Artho's confirmed chapter 12 Plan that provided for auction of Artho's assets and *payment* of HSB's claim to the extent of its liens against the assets.

### *(3) Res Judicata*

Res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised" in a prior proceeding that was decided on the merits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Its purpose is to ensure finality of the judgment and to prevent subsequent collateral attacks on such judgment made by a competent court. *Oreck Direct, LLC*

---

[50] Doc. No. 28 at 6–7. Relatedly, the applicable loan documents conspicuously contain the language prescribed by Tex. Bus. & Com. Code § 26.02(e). *See* Doc. No. 58 at 5–6.
[51] Doc. No. 53 at 20–21; Doc. No. 54 at 23–25.

*v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). This in turn protects litigants from multiple

lawsuits and preserves judicial resources. *Id.* Four elements are required for res judicata to

apply: "(1) the parties must be identical in the two actions; (2) the prior judgment must have

been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the

merits; and (4) the same claim or cause of action must be involved in both cases." *Peoples State*

*Bank v. Gen. Elec. Capital Corp. (In re ARK-LA-TEX Timber Co.)*, 482 F.3d 319, 330 (5th Cir.

2007). "This four-part test has been applied in the bankruptcy context of an order confirming a

plan of reorganization." *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir. 1992).

As between Artho and HSB, the first and second elements of res judicata are satisfied.

Regarding the third element—a final judgment on the merits—the Supreme Court has stated that

a bankruptcy court's order confirming a proposed plan of reorganization is a final judgment.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010); *accord La Tierra*

*Interiors, Inc. v. Wash. Fed. Savs. (In re Tullius)*, 500 F. App'x 286, 290 (5th Cir. 2012). At

issue, then, is the fourth element: whether Artho's action here raises the same claim or cause of

action present in the underlying bankruptcy.

"To determine whether the causes of action involved in both cases are the same the Fifth

Circuit adopted a 'transactional test', i.e. are the two actions based on the 'same nucleus of

operative facts'?" *Mickey's Enters. v. Saturday Sales, Inc. (In re Mickey's Enters.)*, 165 B.R.

188, 192 (Bankr. W.D. Tex. 1994) (quoting *Eubanks*, 977 F.2d at 171). The *Eubanks* decision is

instructive on this point. In *Eubanks*, the debtors confirmed a chapter 11 plan and then

subsequently filed an adversary against two banks alleging several causes of action.[52] *Eubanks*,

---

[52] The debtors alleged a violation of the Louisiana Blue Sky Law, breach of fiduciary duty, fraud, and breach of
contract. *Eubanks*, 977 F.2d at 169.

14

977 F.2d at 168. In deciding that the claims alleged in the adversary were the same as those that could have been brought in the bankruptcy, the court noted, "the loan transaction at the heart of the instant litigation was also the source of [the creditor's] claim against the [debtors'] estate, a claim which was uncontested and fully allowed as one of the provisions in the Plan." *Id.* at 172. Put another way, the debtors' lender liability claims raised issues of fact that would determine the treatment and amount of the debt owed to the bank. *Id.* Turning then to the debtors' opportunity to pursue such claims in the bankruptcy court, the Fifth Circuit found that the debtors had sufficient knowledge with which to schedule, disclose, or bring to the attention of the bankruptcy court the claims against the banks but failed to do so. *Id.* at 174. The debtors' decision "to treat the banks' claims as allowable for plan confirmation purposes and then, later on, institute litigation on their claim" was barred by res judicata. *In re Mickey's Enters.*, 165 B.R. at 193 (discussing the holding of *Eubanks*). An important distinction exists here, however. Although Artho did not schedule his claims against the Defendants, his Plan specifically reserved certain claims, particularly against HSB.[53] *See In re Tex. Wyo. Drilling, Inc.*, 422 B.R. at 626–27.

Further, as to the other defendants, any claims against them do not meet the first element of res judicata (identical parties in the two actions) because those defendants were not and could not have been parties to the bankruptcy. Aside from HSB, no other defendant was addressed by the bankruptcy Plan; they were not parties in interest until after the bankruptcy auction.[54]

---

[53] Case No. 15-20046, Doc. No. 70 at 19–20.

[54] A party in interest is so described: "The primary meaning ascribed is 'one whose pecuniary interest is directly affected by the bankruptcy proceeding'." *In re Kutner*, 3 B.R. 422, 425 (Bankr. N.D. Tex. 1980) (citation omitted). "This same common sense concept is sometimes expressed as 'those who have an interest in the res to be administered and distributed'." *Id.* (quoting *Rosenbaum v. Dutton*, 203 F. 838, 841 (8th Cir. 1913)).

The Defendants assert that certain claims of Artho are also barred under res judicata by the Court's order approving the sale of Artho's assets after the auction. Artho, by counsel, filed the Report of Sale of Real Property and included proper notice and time to object. No objections were filed in response to the report of sale. And *now*, Artho, the debtor, takes issue with the auction that was conducted per his chapter 12 Plan and for which he sought approval, including the disbursement of proceeds, by *his* report filed after the auction was conducted. Artho can hardly complain about the auction when he requested approval of the sale and distribution of the proceeds from the auction. The Court's order approving the sale of real property is res judicata and bars Artho's claims that arise out of the alleged misconduct *at the auction by HSB or any of the other defendants. See Ries v. Paige (In re Paige)*, 610 F.3d 865, 871 (5th Cir. 2010) (finding that a bankruptcy court's order, from which no appeal is taken, is a final judgment on the merits); *Bank of Lafayette v. Baudoin (In re Baudoin),* 981 F.2d 736, 742 (5th Cir. 1993) (finding that a bankruptcy court's order approving or confirming the sale of estate property is a final judgment on the merits).

### *(4) Statute of Limitations*

The Defendants allege that Artho's conspiracy claims are barred by a two-year statute of limitations. A two-year statute of limitations is imposed for the following: "trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer." Tex. Civ. Prac. & Rem. Code § 16.003(a). The period by which the claim must be filed begins to run "the day the cause of action accrues." *Id*. § 16.003(b). Civil conspiracy to commit fraud is subject to the two-year statute of limitations. *Taylor v. Deutsche Bank AG*, No. 3:14-CV-0453-N, 2014 WL 12586180, at *7 (N.D. Tex. Nov. 24, 2014) (citing *Navarro v. Grant*

*Thornton, LLP*, 316 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). The discovery rule applies to such actions and, therefore, the statute of limitations begins to run when the person being defrauded knew or should have known of the conspiracy to commit fraud claim. *In re Estate of Herring*, 970 S.W.2d 583, 586 (Tex. App.—Corpus Christi 1998, no pet.). Accordingly, to the extent the Defendants can prove that Artho knew or should have known of the conspiracy to commit fraud claims on February 7, 2015, two years and one day prior to his complaint, such claims are barred by the statute of limitations. This cannot be determined from the pleadings.

### (5) Torts, Derivative Torts, & Civil Conspiracy

### (a) Economic duress

In Texas, the elements of the tort of economic duress are as follows: "(1) there is a threat to do something which a party threatening has no legal right to do; (2) there is some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection." *Lee v. Wal-Mart Stores, Inc.*, 34 F.3d 285, 288 (5th Cir. 1994) (internal quotation and citation omitted). The financial distress must be the result of the opposing party's actions. *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993). The burden is on the plaintiff to prove, among other things, that the defendant threatened to do something it had no legal right to do. *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, Local 450*, 8 F. Supp. 3d 896, 919 (S.D. Tex. 2014). The existence of "financial peril" or a threat of impending bankruptcy does not necessarily result in the conclusion that the plaintiff suffered economic duress, rather the financial stress must be the result of the defendant's alleged conduct. *Chouinard v. Chouinard*, 568 F.2d 430, 434 (5th Cir. 1978). A creditor that issues notices of foreclosure under the terms

of a valid deed of trust is not threatening to do something that it does not have the legal right to

do; such notices do not meet the first element of economic duress. *See Davidson v. JP Morgan*

*Chase, N.A.*, No. 4:13-CV-3698, 2014 WL 4924128, at *12–13 (S.D. Tex. Sept. 29, 2014).

Artho alleges that he was under economic duress by HSB's refusal to accept his collateral

to extend the existing loans and by HSB's issuance of a foreclosure notice (issued during a

period of time when Artho thought he was given an extension to pay the loans by conducting an

auction).[55]  HSB had a legal right to refuse to accept Artho's additional collateral (when it was

under no legal obligation to accept such collateral) and a legal right to issue a foreclosure notice

under the terms of the deeds of trust.  The facts pleaded by Artho, on their face, do not indicate a

cause of action for economic duress.

### (b) Fraud by false promises

Artho also alleges a cause of action for fraud by false promises.  The elements of fraud

are as follows: (1) the defendant made a material representation that was false; (2) the defendant

"knew the representation was false or made it recklessly as a positive assertion without any

knowledge of its truth;" (3) the defendant intended to induce the plaintiff to act upon that

representation; and (4) the plaintiff actually and justifiably relied upon the representation and

suffered injury.  *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.

2001).  An alleged fraud claim that, as here, contravenes the Statute of Frauds might still allow

the plaintiff to recover damages that were incurred as a result of the plaintiff's reliance on the

alleged oral misrepresentation.  *See 1001 McKinney Ltd. v. Credit Suisse First Bos. Mortg.*

*Capital*, 192 S.W.3d 20, 29–30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing

*Haase v. Glazner*, 62 S.W.3d 795, 800 (Tex. 2001) for its holding "that despite the fact that the

---

[55] Doc. No. 28 at 20–21.

statute of frauds prevents enforcement of the agreement, a plaintiff can recover out-of-pocket damages incurred in reliance on the alleged false representation").[56] Thus, to the extent Artho's fraud claim seeks to recover reliance damages—alleged payments made to secure the auctioneer for a pre-bankruptcy auction—such claim survives the Statute of Frauds defense.[57]

To prevail on his fraud claim, Artho must demonstrate that he actually and justifiably relied on the alleged oral representation made by HSB and thereby suffered damages. *See id.* at 30. Justifiable reliance implies a duty upon the party to whom the representation is made to exercise ordinary and reasonable due diligence to protect their own interests. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). "Therefore, reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Patek v. Alfaro (In re Primera Energy, LLC)*, 579 B.R. 75, 142 (Bankr. W.D. Tex. 2017).

Nonetheless, a material fact is one that likely affects the conduct of a reasonable person concerning the transaction. *Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*, 181 S.W.3d 879, 888 (Tex. App.—Dallas 2006, no pet.). Courts measure justifiable reliance by examining "a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud." *Ward Family Found. v. Arnette (In re*

---

[56] In *Credit Suisse*, the court held that there existed a fact issue related to the recovery of out-of-pocket damages incurred in reliance on the alleged misrepresentation. *Credit Suisse*, 192 S.W.3d at 30. In that case, the plaintiff was engaged in a renovation project and was allegedly told that the defendant would lend the plaintiff more money to fund the project. *Id.* at 24. Relying on this oral representation, the plaintiff continued to renovate and lease spaces in the building. *Id.* at 29. The court stated, "Reliance damages, such as money spent on additional construction, are not part of the benefit of the alleged bargain between the parties." *Id.*

[57] Discussed previously, Artho's claims for fraud by false promises cannot survive the motion to dismiss because the alleged oral promise does not satisfy the Statute of Frauds. This portion of the opinion, however, focuses on the viability of a claim for damages incident to the alleged injury.

*Arnette*), 454 B.R. 663, 687 (Bankr. N.D. Tex. 2011). Put another way, justifiable reliance contemplates that the plaintiff's decision-making would have been affected by the concealed material information if it were disclosed. *In re Primera Energy, LLC*, 579 B.R. at 160.

Artho has pleaded facts that he relied on the alleged false promise of HSB.[58] As previously discussed, the alleged oral promise of the bank was to not foreclose his property prior to Artho's anticipated auction. The alleged promise, however, directly contradicts the express, unambiguous terms of the written deeds of trust. Artho's reliance, therefore, is not justified as a matter of law. *See id*. at 142.

### *(c) Civil conspiracy claims*

Moving then to Artho's various conspiracy claims: "[c]onspiracy is a derivative tort requiring an unlawful means or purpose, which may include an underlying tort." *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). Liability for civil conspiracy depends on participation in an underlying tort. *See Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Proof of the conspirators' intent to engage in conduct that results in injury, without more, does not establish a civil conspiracy claim; rather, the conspirators must have the specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means. *Id*. (citing *Chu*, 249 S.W.3d at 446 for its explanation that "alleged conspirator 'could only be liable for conspiracy if he agreed to the *injury* to be accomplished; agreeing to the *conduct* ultimately resulting in the injury is not enough'") (emphasis in original). Conspiracy, thus, requires a specific intent to cause the intended injury. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996).

---

[58] Artho thought he had a good, long-standing relationship with HSB such that he could trust any representations made by the loan officer. *See Credit Suisse*, 192 S.W.3d at 30 (describing the question of justifiable reliance as one for the factfinder).

To establish a civil conspiracy, the following elements must be met: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (internal quotation and citation omitted). "[T]he parties must be aware of the harm or wrongful conduct at the inception of the . . . agreement." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Circumstantial evidence may prove the existence of a civil conspiracy and an agreement to cause the injury may be inferred "from joint participation in the transactions and from enjoyment of the fruits of the transactions." *Chu*, 249 S.W.3d at 447 (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (Tex. 1963)) (internal quotation omitted).

The Supreme Court of Texas has long held that "[a] threat to sue on a past due note and to foreclose the lien securing same is neither fraud nor duress. . . . It is never duress to threaten to do that which a party has a legal right to do." *Ulmer v. Ulmer*, 162 S.W.2d 944, 947 (Tex. 1942) (internal quotation and citation omitted). This is the crux of the Defendants' motions to dismiss as applied to the tort claims—and conspiracies to commit those torts. The Defendants allege both that Artho's failure to prove the elements of the related torts necessarily results in dismissal of the conspiracy to commit fraud by false promises and conspiracy to commit duress claims. Artho's claims of conspiracy do not describe a meeting of the minds, nor do they establish an agreement between HSB and the other defendants to cause injury to Artho. While the complaint may allege conduct by each party that could have resulted in injury to Artho, such conduct, under the law, is not actionable as a conspiracy where there is no evidence of an agreement to cause the injury. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968). Artho has not pleaded facts that suggest a meeting of the minds between two or

more persons for the purposes of causing him injury. Instead, the complaint attempts to make inferences regarding the relationship of the parties. Without more evidence of "joint participation" in the injury, the Court cannot infer a conspiracy. *See Chu*, 249 S.W.3d at 447.

### (6) Civil Conspiracy to Commit a Crime – 18 U.S.C. § 152(5)

The above analysis related to civil conspiracy also applies here. Section 152(5) of Title 18 states, "[a] person who knowingly and fraudulently receives any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11; shall be fined under this title, imprisoned not more than 5 years, or both." Importantly, 18 U.S.C. § 152 is a criminal statute, and there is no express or implied private cause of action allowed. *See, e.g.*, *Heavrin v. Boeing Capital Corp.*, 246 F. Supp. 2d 728, 731 (W.D. Ky. 2003); *Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793, 795–96 (M.D.N.C. 1996); *Terio v. Terio (In re Terio)*, 158 B.R. 907, 911–12 (S.D.N.Y. 1993); *Martin v. CitiFin., Inc. (In re Martin)*, 387 B.R. 307, 313 (Bankr. S.D. Ga. 2007); *Wood v. United States (In re Wood)*, 341 B.R. 804, 812 (Bankr. S.D. Fla. 2006) (all indicating that there is no private cause of action under 18 U.S.C. § 152). Those who receive a material amount of property from a debtor with the intent to defeat the provisions of the Bankruptcy Code must manifest such intent at the time they receive the property. *See United States v. Holmes*, 654 F. App'x 880, 882–83 (9th Cir. 2016).

Here, again, Artho fails to plausibly allege a meeting of the minds between the Defendants and to plausibly allege, with particularity, the requisite unlawful acts of the civil conspiracy. *See Tow v. Bulmahn (In re ATP Oil & Gas Corp.)*, 711 F. App'x 216, 223–24 (5th Cir. 2017). Were Artho to amend his pleading to conform to the standards of Rules 9(b) and 12(b), a conspiracy to commit a crime is itself a criminal act and, as previously discussed, the

crime alleged provides no express or implied civil remedy. Artho lacks standing, therefore, to pursue such action against the Defendants.

### (7) Civil Conspiracy to Commit a RICO Violation

"RICO creates a civil cause of action for 'any person injured in his business or property by reason of a violation of section 1962.'" *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (quoting *Beck v. Prupis*, 529 U.S. 494, 496 (2000)). To state a claim under 18 U.S.C. § 1962, there must be: "(1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Id.* (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)) (emphasis in original). Here, Artho asserts a civil conspiracy to violate 18 U.S.C. § 1962(b), which is made unlawful by 18 U.S.C. § 1962(d).[59]

By the complaint, Artho describes himself as both the RICO "person" and the "enterprise."[60] Artho does not make any such allegation that HSB or the other defendants are "persons" for purposes of claiming a RICO violation. Artho's allegation that he is the "enterprise" is misguided.

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Boyle v. United States*, 556 U.S. 938, 944 (2009). The Supreme Court has stated that by its terms, an enterprise is intended to be broad and reaches "a group of

---

[59] (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

. . .

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

[60] Doc. No. 28 at 23. Interestingly, this is not corrected in Artho's response to the Defendants' motions to dismiss.

persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 944 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  To prove the existence of an enterprise, the plaintiff must show "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." *Id*. at 945 (quoting *Turkette*, 452 U.S. at 583) (internal quotation omitted).  It is the "continuity or ongoing nature of the association" that establishes enterprise status. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015).  This is where the claim of civil conspiracy to violate 18 U.S.C. § 1962(b) must fail.  Neither Artho nor his "d/b/a Artho Cattle" are an enterprise for purposes of the statute.

In addition, a factual issue exists related to the necessary "pattern of racketeering activity."  Artho alleges that HSB "wrongfully issued numerous Notices of Foreclosure Sales placed into the U.S. Postal Service."[61]  The complaint contends that *eight* notices of foreclosure were sent, while HSB contends that only *one* set of notices was sent.[62]  Without more, the Court is unable to determine if the notices of foreclosure constitute a pattern of racketeering activity. *See* 18 U.S.C. § 1961(5) (defining a pattern of racketeering activity as at least two acts of racketeering activity, of which includes mail fraud).

Lastly, Artho has failed to allege a RICO civil conspiracy.  Much like the analysis related to civil conspiracy under Texas law, "the core of a RICO civil conspiracy is an agreement to commit predicate acts[;] a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992)) (internal quotations

---

[61] Doc. No. 28 at 24.
[62] *Id*; Doc. No. 42 at 20.  HSB represents that one mailing containing all notices of foreclosure was sent and received by Artho on February 9, 2015.

omitted). The complaint is devoid of any allegation related to such an agreement beyond the bare recitation that two or more of the Defendants conspired. Absent any facts that the Defendants came to an actual agreement to engage in the illegal conduct, the civil conspiracy claim must fail. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016).

## Artho's Motion for Leave to Amend the Complaint

Federal Rule of Civil Procedure 15(a)(2), made applicable in bankruptcy by Bankruptcy Rule 7015, states that the court "should freely give leave [to amend] when justice so requires." Such language suggests a bias in favor of granting leave to amend a deficient complaint, and the court must provide a "substantial reason" for denying that request. *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)) (internal quotation omitted). The Supreme Court lists five considerations in determining whether to deny leave to amend the complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Smith*, 393 F.3d at 595.

At issue here is whether Artho's request for leave to amend his complaint, stated succinctly in his responses to the motions to dismiss, would be futile.[63] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). In *Marucci*, the district court allowed the plaintiff two opportunities to

---

[63] "(i). In the alternative, Jerry should be granted leave to amend his pleadings to rectify whatever procedural shortcomings, if any, this Court may find in his pleadings under the standards of Rule 12(b)(6). Should this Court determine that any portion of Jerry's existing pleadings fail to satisfy the liberal standards of Federal Rule 12(b)(6) in this matter (which Jerry denies, for the reasons set forth above), Jerry should be granted, and under such circumstances Jerry hereby requests, leave to file an amended complaint to correct and/or answer any such deficiencies as the Court may find." Doc. Nos. 53, 54 at 32–33.

amend its complaint before ultimately denying a third attempt to amend the complaint. *Id.* In reviewing the district court's denial for an abuse of discretion, the Fifth Circuit held that the district court did not abuse its discretion because the plaintiff was given two previous opportunities to cure defects that were likely incurable. *Id.* (citing *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 291 (5th Cir. 2006) ("Plaintiffs had three attempts to produce a sufficient complaint. The [district] court dismissed the complaint and denied leave to amend only after the third insufficient attempt."); *ABC Arbitrage Plaintiffs Grp. v. Tchuruk,* 291 F.3d 336, 362 (5th Cir. 2002) (holding that it was not an abuse of discretion to deny plaintiffs a third opportunity to sufficiently state a claim)). Generally, therefore, courts will allow plaintiffs an opportunity to cure pleading deficiencies unless it appears that the defects are incurable. *See Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 621 (N.D. Tex. 2016) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted")).

Often, when a plaintiff requests leave to amend their complaint, the request is supported either by a proposed amended complaint or by a recitation of the facts that will support an amendment to the complaint. Where a request for leave to amend does not include either proposed amendments or new facts, the law supports denial of such request. *See Cardenas v. Young*, 655 F. App'x 183, 187 (5th Cir. 2016) (finding that an amendment to the complaint

would be futile because no new facts were alleged and there was no explanation of a viable claim under the facts of the current complaint); *see also Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 524 (10th Cir. 2013) ("The district court is not required to imagine all possible amendments and determine whether any would state a claim."). At the least, a motion to amend should make the court aware of the facts that would be pleaded in the amended complaint. *See Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) ("a bare bones motion to amend remains futile when it 'fails to apprise the district court of the facts that he would plead in an amended complaint.'") (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)).

In support of his request for leave to amend, Artho cites to "Wright & Miller, §1357, Page 733, Footnote 94."[64] This reference is aligned with the previously cited material in that it confirms the court's discretion to grant or deny leave to amend the complaint. Further, the cited cases in the referenced footnote describe instances when the court can deny leave to amend because it appears an amendment is futile. Overall, this citation stands for the proposition that courts should not dismiss the plaintiff's complaint without adequate opportunity to plead their best case by correcting any identified deficiencies in the complaint.

Artho also cites *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000). In that case, cotton farmers brought claims for breach of implied warranty of merchantability, breach of good faith and fair dealing, intentional infliction of emotional distress, and negligence against pesticide manufacturers. The plaintiffs' claims were dismissed and on appeal the Fifth Circuit was asked to decide three issues, none of which related to a request for leave to amend. The court stated, "[p]laintiffs' complaint, taking all allegations set forth as true and taking all inferences in a light most favorable to plaintiffs, at least raises the possibility that they could

---

[64] Doc. No. 53.

succeed in establishing a claim against [one of the defendants] under Mississippi law." *Id.* This statement supports the standard applied when courts decide a motion to dismiss for failure to state a claim, which, in turn, is also applied to the Court's decision that an amendment to the complaint would also fail and is futile.

Lastly, Artho cites *Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985). In this suit by a minority partner, the Fifth Circuit reversed and remanded the district court's dismissal for failure to state a claim. In so doing the court stated, "[s]uch a dismissal is not proper 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The Fifth Circuit went on to discuss other deficiencies arising from the complaint's failure to comply with Rules 8 and 9 of the Federal Rules of Civil Procedure. The district court did not, however, base its decision to dismiss on these failures. The Fifth Circuit, nonetheless, instructed, "[b]ut such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances." *Id.* The opinion appears to support the proposition that courts are in favor of granting leave to amend the complaint instead of dismissing the complaint without the opportunity to cure deficiencies.

Artho's request for leave to amend his complaint should be denied for three reasons. First, under consideration is Artho's first amended complaint—this is his second attempt to state a claim upon which relief may be granted—and the law supports the Court's exercise of discretion to deny leave to amend when the plaintiff has been given a previous opportunity to

correct deficiencies.[65]  Second, Artho's response to the Defendants' motions to dismiss does not

include any proposed amendments to the complaint nor does it allege additional facts that could

survive a Rule 12(b)(6) motion to dismiss.  Although Artho attempts to raise an issue with his

signature on the related HSB loan documents, this argument is foreclosed by both judicial

estoppel and res judicata.  Likewise, despite multiple opportunities for which it could be

achieved, Artho has failed to produce the email by which he claims HSB accepted his position

regarding the auction that was to occur prior to the bankruptcy.  Nor does Artho allege an act

committed by HSB that was illegal and caused him economic duress.  Also absent are any facts

related to a meeting of the minds between the Defendants, a necessary element to plausibly

allege a conspiracy cause of action.  In fact, Artho's response does nothing more than recite the

same or similar facts as those raised in the first amended complaint.  Third, any cause of action

related to the post-petition bankruptcy auction is barred by res judicata by the Court's order

approving the Report of Sale of Real Property.  Artho's request to amend his complaint,

therefore, is futile and must be denied.

## Conclusion

### *Count 1 – Fraud by False Promises*

Artho's reservation of claims in his chapter 12 Plan, particularly claims against HSB,

preserved Artho's standing to bring such claims.  But his false promise claim against HSB is

subject to the Statute of Frauds and thus fails as a matter of law.

His related, reliance-based fraud claim that survives the Statute of Frauds defense

likewise fails.  The promises allegedly made by HSB, which Artho claims he relied on and which

---

[65] Notably, however, Artho exercised his right to amend after HSB filed its first motion to dismiss.  Artho did not request nor receive leave of court to amend the complaint currently before the Court, though he did receive an extension of time to substitute counsel and to file a response to the motion to dismiss or an amended pleading.

caused him damages, contradict the underlying terms of the notes that are secured by Artho's real property. Artho's complaint does not demonstrate that he justifiably relied on such promises. Artho alleges that he was unable to obtain alternative financing because HSB told other lenders that it would not release its liens against Artho's property even if the debt to HSB was paid. This allegation, not addressed above, cannot support the claim for fraud by false promises because it does not meet the "who, what, when, where, and how" standard required for pleading fraud with particularity. *See Spicer*, 751 F.3d at 365. Count 1 of the complaint, therefore, must be dismissed.[66]

### Count 2 – Civil Conspiracy to Commit Fraud by False Promises

The complaint fails to allege facts which, if taken as true, establish a meeting of the minds to commit fraud by false promises. Rather, assertions are made to allow for inferences regarding the relationship of the parties. Such inferences, however, are not enough when the underlying injury could not have resulted from the alleged conspiracy (i.e., the tort cannot be established from the pleaded facts). Count 2 of the complaint must be dismissed.

### Count 3 – Duress

Issuing a notice of foreclosure on account of a legitimate past-due debt and refusing to accept or consider collateral, where there is no legal duty to accept or consider same, are not unlawful acts. As such, the complaint fails to allege facts of a threat to perform an action for which HSB had no legal right to engage. This is a critical element to establishing a claim for economic duress; thus, Count 3 of the complaint will be dismissed.

---

[66] In his response to the motion to dismiss, Artho attempts to challenge the validity of his signature on the underlying notes. While these facts could allow his claims for fraud by false promises to survive, challenging the validity of those documents, at this stage, is barred by judicial estoppel.

### *Count 4 – Civil Conspiracy to Commit Duress*

As described by the dismissal of Count 2, Count 4 should also be dismissed for failure to allege facts of a critical element of the civil conspiracy: a meeting of the minds.  Likewise, the failure of an alleged object of the conspiracy necessitates dismissal of the claim for conspiracy.

### *Count 5 – Civil Conspiracy to violate 18 U.S.C. § 152(5)*

Count 5 must be dismissed for failure to allege facts that result in a meeting of the minds between two or more of the Defendants to commit the substantive crime.  Additionally, Artho lacks standing to pursue an action against the Defendants for the substantive crime.

### *Count 6 – Conspiracy to Violate 18 U.S.C. § 1962(b)*

Again, the complaint does not allege a necessary element to plausibly allege a conspiracy because there is no showing of a meeting of the minds.  Furthermore, the Defendants could not conspire to commit the underlying injury because neither Artho nor his business is an enterprise for purposes of the RICO statute.  Count 6 of the complaint will be dismissed.

### End of Memorandum Opinion ###