

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 24, 2018**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JERRY ARTHO, | § | Case No.:  15-20046-RLJ-12 |
| | § | |
|         Debtor. | § | |
| _____ | § | _____ |
| | § | |
| JERRY ARTHO, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 17-02002 |
| | § | |
| HAPPY STATE BANK, | § | |
| PANHANDLE ENTERPRISES, INC., | § | |
| OPR H2O, LLC, SHANNON T. | § | |
| BURDETT, and OUTPOST | § | |
| RANCHES, LTD., | § | |
| | § | |
| | § | |
|      Defendants. | § | |

1

## MEMORANDUM OPINION

### (Findings of Fact and Conclusions of Law)

The defendants—Happy State Bank (HSB), Panhandle Enterprises, Inc., OPR H2O, LLC, Outpost Ranches, Ltd., and Shannon Burdett (collectively, Defendants)—filed motions for sanctions against the plaintiff (and chapter 12 debtor), Jerry Artho, and his attorneys, Carl Adams and Dennis Olson.[1]  Defendant HSB filed its application requesting approval of its attorneys' fees as a charge against Artho and the bankruptcy estate.[2]  The Court jointly issues its findings of fact and conclusions of law on these matters.

### Findings of Fact

### The Bankruptcy Filing, Plan, and Plan
### Confirmation and Auction

1.  On March 2, 2015, Artho filed bankruptcy under chapter 12 of the Bankruptcy Code.[3] He filed his amended chapter 12 plan of reorganization and motion for valuation (the Plan) on June 17, 2015.[4]

2.  To pay HSB's secured claim, and the claims of other creditors, the Plan provided for a sale of all of Artho's real estate, farm machinery, and equipment free and clear of all interests, liens, and encumbrances.[5]  The sale was to be conducted by public auction within 60 days after the Court's entry of a confirmation order.[6]

3.  HSB was designated as Class 3 under the Plan.  The Plan stated that HSB had a claim in the approximate amount of $1,534,185 secured by, among other items, Artho's equipment,

---

[1] Doc. Nos. 103, 114.  All "Doc. No." references made herein are to the present adversary proceeding unless otherwise indicated.
[2] Case No. 15-20046, Doc. No. 143.
[3] Case No. 15-20046, Doc. No. 1.
[4] Case No. 15-20046, Doc. No. 70.
[5] Case No. 15-20046, Doc. No. 70 at 6–10. HSB-BMWB Ex. 17.
[6] Case No. 15-20046, Doc. No. 70 at 6. HSB-BMWB Ex. 17.

livestock, crops, inventory, and deed of trust liens against real property. Section 2.03 of the Plan

stated as follows:

> The listing of such collateral documents, or any statements in the language of the Plan shall not constitute an admission by the Debtor that such documents create valid security interests or liens against the collateral, and such determination is specifically reserved by the Debtor in the event he determines it is necessary and appropriate to initiate an adversary proceeding to establish the nature, extent and validity of liens and encumbrances asserted against the assets of the Estate. Furthermore, such listing shall not prejudice HSB in the assertion of any other liens or security interests against collateral should there be additional documents not included in this listing.

Plan ¶ 2.03.

4. At Section 4.03 of the Plan, which sets forth the treatment of HSB's claim, the Plan

provided that from the sale of assets Artho would pay "the total amount of HSB's claim in full."

It then states as follows:

> The Debtor shall pay HSB's claim in full upon the closing of the sales of the real and personal property notwithstanding Debtor's reservation and retention of all claims and causes of action set out in Section 10.03 of this Plan. **Such distribution of the proceeds from the sales to HSB will not be subject to disgorgement after the auctions with the exception of any sums ultimately determined by the Bankruptcy Court to exceed the amount of its allowed proof of claim after ruling on objections**.

Plan ¶ 4.03 (emphasis added).

5. The Plan generally reserved claims and causes of action:

> [T]he terms of the Plan specifically provide for the reservation and retention of all such causes of action and provide for the Debtor and any creditor to investigate and, if appropriate, to prosecute such claims before the Bankruptcy Court after the Effective Date and prior to the case being closed. Such reservation and retention includes, without limitation, all bankruptcy causes of action, such as claims for fraudulent conveyances, preferences, equitable subordination, declaratory judgments, suits to determine the nature, extent, validity and priority of liens and security interests, or others provided under the provisions of the Bankruptcy Code, as well as pre-petition claims such as claims for breach of contract, breach of fiduciary duty, lender liability, fraud, trespass to try title, and others. Such causes of action belong to the Bankruptcy Estate or a creditor, as applicable, and shall be retained by the Estate and all

creditors and pursued by the Debtor or any creditors as such may be necessary and appropriate based upon the judgment and discretion of the respective parties.

Plan ¶ 10.03.  Then the Plan, at ¶ 10.03(a), specifically reserved certain claims against HSB; such claims are similar to those raised in this adversary proceeding.[7]  The Plan stated that the alleged facts underlying the claims "could nullify the validity of the liens asserted by [HSB] . . . and also give cause for the award of a judgment against [HSB] and others acting in concert."[8]

6.  In accordance with § 1225(a)(5), the Plan stated, "the Debtor may not obtain a discharge on any secured Claim which has a remaining balance owning [sic] after completion of all payments under the Plan."[9]

7.  The Plan was confirmed on June 19, 2015.[10]

8.  On September 3, 2015, Artho filed his Debtor's Report of Sale of Personal Property, confirming that his real estate, farm machinery, and equipment were sold at an auction held on August 14 and 15, 2015.[11]  The Report of Sale of Personal Property reflected net proceeds of $41,388.45 to Artho on the sale of his farm machinery and equipment.[12]

9.  Artho separately filed the Debtor's Report of Sale of Real Property on October 6, 2015.[13]  The Report reflected total dollars received from the sale of $3,632,358.95.[14]  From those funds, distributions were made to pay secured creditors, including HSB, and fees of professionals; and $99,411.89 was turned over to Artho.  The remaining funds from the sales of real and personal

---

[7] Case No. 15-20046, Doc. No. 70 at 19–20. HSB-BMWB Ex. 17.
[8] Case No. 15-20046, Doc. No. 70 at 20. HSB-BMWB Ex. 17.
[9] HSB-BMWB Ex. 17 at 18. All "§" references herein are to Tile 11 of the United States Code, unless otherwise indicated.
[10] Case No. 15-20046, Doc. No. 71.
[11] Case No. 15-20046, Doc. No. 83.
[12] *Id.*
[13] Case No. 15-20046, Doc. No. 86.
[14] *Id.*

4

property were deposited in Artho's counsel's trust account to pay unsecured creditors.[15]  Later, after paying unsecured creditors, the balance of about $945,000 held in counsel's trust account was paid to Artho.

10. The Report of Sale of Real Property confirms that $1,617,580.75 was paid to HSB as payment in full.[16]

11. By the Court's order, entered November 6, 2015, the Report of Sale of Real Property was approved, including the distributions contained in the referenced report.[17]

## The Adversary Proceeding

### (a) Artho sues Defendants

12. The complaint initiating this adversary was filed by Artho on February 8, 2017, alleging several causes of action against HSB and seeking money damages of an unliquidated amount.[18] He filed an amended complaint on May 31, 2017, which added the Burdett Defendants.[19]

13. Artho alleged six causes of action against HSB, four of which are also alleged against the Burdett Defendants.[20]  The causes of action against HSB were: (1) fraud by false promises; (2) civil conspiracy to commit fraud by false promises; (3) duress; (4) civil conspiracy to commit duress; (5) civil conspiracy to violate 18 U.S.C. § 152(5); and (6) conspiracy to violate 18 U.S.C. § 1962(b).[21]  Artho asserted the four conspiracy-based causes against the Burdett Defendants, as well.[22]

---

[15] *Id.* at 3.
[16] HSB-BMWB Ex. 19 at 3.
[17] Case No. 15-20046, Doc. No. 93.
[18] Doc. No. 1.
[19] Doc. No. 28. "Burdett Defendants" refers to Panhandle Enterprises, Inc., OPR H2O, LLC, Outpost Ranches, Ltd., and Shannon Burdett.
[20] *Id.*
[21] *Id.*
[22] *Id.*

14. Essentially, the amended complaint alleged that HSB and the Burdett Defendants conspired to acquire Artho's assets at prices way below their actual values.

**(b) Court grants Defendants' motions to dismiss**

15. HSB and the Burdett Defendants filed motions to dismiss Artho's claims, arguing that Artho's complaint did not comply with FRCP 12(b)(6) and FRCP 9(b) and that Artho lacked standing to complain of Defendants' actions.[23]

16. On March 30, 2018, the Court granted Defendants' motions to dismiss, holding that although Artho retained standing to prosecute the claims alleged in the amended complaint, such claims were either barred by res judicata, were not plausible under FRCP 12(b)(6), or did not comply with the heightened pleading standard of FRCP 9(b) when alleging fraud.[24]

17. The Court's Memorandum of Opinion and the order granting Defendants' motions to dismiss the adversary proceeding were entered on March 30, 2018.[25]

**(c) Artho files motion to reconsider**

18. Artho, appearing pro se, filed his motion to reconsider on April 9, 2018.[26]

19. HSB and the Burdett Defendants each filed responses to the motion to reconsider.[27] HSB asserts that Artho's motion presents nothing new to the Court and does not comply with FRCP 59 or Rule 9023.[28] The Burdett Defendants make no specific challenge to Artho's motion but simply request that the Court's order remain undisturbed.[29] (The Court has disposed of Artho's motion by separate order.[30])

---

[23] For clarity, when discussing the Federal Rules of Civil Procedure, the rule will be designated "FRCP." When discussing the Federal Rules of Bankruptcy Procedure, the rule will be designated "Rule."
[24] *See* Doc. No. 88.
[25] Doc. Nos. 88, 89.
[26] Doc. No. 94. Several supplements to the motion to reconsider were also filed on the same day. Doc. Nos. 95–98.
[27] Doc. Nos. 111, 113.
[28] Doc. No. 113.
[29] Doc. No. 111.
[30] Doc. No. 157.

**(d) Defendants seek sanctions**

20. Defendants each filed motions for sanctions—HSB on April 16, 2018, and the Burdett Defendants on May 4, 2018.[31]

21. The Defendants request sanctions against Artho, individually, and against his attorneys, Carl Adams and Dennis Olson.[32] The motions for sanctions assert that Adams and Olson knew there was no factual or legal support for Artho's claims against Defendants and were warned multiple times to voluntarily dismiss the adversary proceeding prior to the Court's ruling. Defendants seek to recover, as sanctions, their attorneys' fees for having to defend Artho's claims.

22. HSB sent two letters to Artho's counsel before filing its motion for sanctions.[33] By both letters—one dated August 16, 2017, and the other dated February 15, 2018—HSB demanded that Artho and his counsel voluntarily dismiss the adversary proceeding. And absent voluntary dismissal, HSB stated it would seek sanctions to recover its attorneys' fees incurred for having to defend the lawsuit.

23. The Burdett Defendants also sent two letters to Artho's counsel prior to filing their motion for sanctions.[34] By their first letter, dated February 16, 2018, the Burdett Defendants stated that they would not seek sanctions if Artho voluntarily dismissed the adversary proceeding. By their second letter, dated April 13, 2018, they demanded Artho's withdrawal of the motion to reconsider. Again, absent voluntary dismissal or withdrawal of the motion to

---

[31] Doc. Nos. 103, 114. HSB filed its original motion for sanctions on April 16, 2018, and its amendment to that motion on the same day.

[32] *Id.*

[33] Doc. No. 102 at 28, 44.

[34] Doc. No. 115 at 31–32, 59–60.

reconsider, the letter states that the Burdett Defendants would seek sanctions to recover their attorneys' fees incurred for having to defend the lawsuit.

24. The letters issued by Defendants to Artho's counsel coincide, at least in part, with Artho's deposition, which was taken on February 13, 2018.[35] The lawyers present at the deposition were Carl Adams for Artho, John Lovell for HSB, and Thomas Riney for the Burdett Defendants.

25. In response to questions asked by Lovell and Riney, Artho could not identify any facts within his personal knowledge or other evidence, either in writing or hearsay-based, that supported his causes of action. He could not identify any written promise by HSB prior to Artho's chapter 12 bankruptcy filing to the effect that the bank would hold-off on foreclosing its liens. And he had no evidence, apart from mere conjecture from having been told about a brief conversation at the post-confirmation auction, of any conspiracy among the Defendants to chill the bidding at the auction. He had no evidence of any conspiracy among the Defendants to acquire his land because of its water. And he had no evidence of conduct by any or all of the Defendants that prevented him from refinancing his debt with HSB.

26. Artho's counsel reserved all questions to the time of trial and did not otherwise conduct any formal discovery.

27. That Artho had no grounds, factually or under the law, to support his causes of action was clear from the deposition.

28. Artho did not have sufficient facts to warrant filing his claims against the Defendants, which was discoverable and apparent at the time of filing the amended complaint.

---

[35] Doc. No. 84.

29. Adams and Olson filed a joint objection to the Defendants' motions for sanctions, arguing that monetary sanctions were improper because the allegations of the amended complaint were made after an analysis of the applicable law and facts.[36]

30. Artho did not file a written objection to Defendants' motions for sanctions until two days after the Court's hearing on the motions.[37]  The objection, like Artho's other pro se filings, is incoherent and fails to address the issues raised by Defendants' motions for sanctions.

### HSB's Application for Fees

31. Contemporaneously with its motion for sanctions, HSB also filed an application for compensation in Artho's bankruptcy.[38]  The application asserts entitlement to attorneys' fees and reimbursement of expenses under § 506(b) of the Bankruptcy Code.  Relying on the language at ¶ 10.03 of the Plan, as did Artho in the adversary proceeding for reservation of *his* claims, HSB argues that its claim of attorneys' fees and expenses was reserved and could be asserted up until the closing of the bankruptcy case.[39]  *See* Finding 5.

32. The application seeks to recover attorneys' fees in the amount of $161,752.26, which represents fees incurred by both HSB's bankruptcy counsel and its counsel retained to defend the adversary proceeding.  Recognizing an overlap in the fees requested by the application and HSB's motion for sanctions, the motion for sanctions states,

> There is overlap between the fees and expenses sought in this Rule 11 Motion and the fees and expenses being sought in the Case No. 15-20046-rlj-12 Attorneys Fee Application.  HSB is not seeking to make a "double recovery" of any fees or expenses. Collectively between this motion and the main case fee application, HSB does not seek to recover more than its total attorneys' fees which it has incurred in this Bankruptcy and ancillary Adversary Proceeding.

Doc. No. 103 at 9–10.

---

[36] Doc. No. 119.
[37] Doc. No. 128.
[38] Case No. 15-20046, Doc. No. 143.
[39] *Id.* at 3

33. The loan documents at issue each contain similar, though not identical, terms for the collection of attorneys' fees.[40]  In general, attorneys' fees are recoverable for enforcing the terms of the instrument, protecting an interest granted under the terms of the instrument, or collecting the debt owed.

34. The Court held a hearing on HSB's and the Burdett Defendants' motions for sanctions and HSB's application for compensation on May 15, 2018.

## Conclusions of Law

### Jurisdiction

1.   The Court has jurisdiction of this action under 28 U.S.C. §§ 1334(b) and 157.  All parties consent to the Court's hearing and deciding the issues raised here.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948–49 (2015); *see also Estate of Frances Maddox v. O'Cheskey (In re Am. Hous. Found.)*, No. 15-02000, 2015 WL 5781396, at *2 (Bankr. N.D. Tex. Sept. 30, 2015).  Additionally, the Court has jurisdiction of the Application for Compensation under 28 U.S.C. § 157(b)(2)(B).

### Defendants' Motions for Sanctions

2.   A motion for sanctions is brought before bankruptcy courts under Rule 9011(c) of the Federal Rules of Bankruptcy Procedure.[41]  Rule 9011 incorporates the provisions of FRCP 11, including procedural and substantive limitations designed to encourage attorney compliance without the imposition of monetary sanctions.[42]  As its title suggests, Rule 9011 holds accountable attorneys that sign papers presented to the court or that make representations to the

---

[40] HSB-BMWB Ex. 3, 4
[41] "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."  Rule 9011(c).
[42] *See* FRCP 11(c)(1)–(6) (practically identical provisions in Rule 9011(c)(1)–(3)).

court, either written or oral.[43]  The purpose of the rule is to dissuade litigants, those represented

and unrepresented, from presenting matters to the court that are baseless or filed in bad faith.

*See, e.g.*, *Law v. Siegel*, 571 U.S. 415, 427 (2014) (discussing the availability of Rule 9011 and

the court's inherent power to utilize its provisions to deter bad-faith litigation conduct).  FRCP

11 sanctions are an "extraordinary remedy" and should be imposed with "extreme caution."

*Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 498 (N.D. Tex. 2016) (internal quotation

and citation omitted).

3.   By signing and filing a pleading with the court, an attorney thereby certifies that "to the

best of [his/her] knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances, [the pleading] is not being presented for any improper purpose," that the claims

"are warranted by existing law or by a nonfrivolous argument" for a change in existing law, and

that the alleged facts have or will have evidentiary support.  Rule 9011(b).

4.   A motion for sanctions may not be filed or presented to the court "unless, within 21 days

after service of the motion," the challenged pleading (and claims) is not withdrawn or corrected.

Rule (9011)(c)(1)(A).

5.   FRCP 11 sanctions may be imposed against an attorney that signs a pleading in his

individual capacity.  *Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1131 (5th Cir. 1987)

*abrogated on other grounds by Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988).

6.   The courts also consider the lawyer's "direct personal involvement in the management of

the litigation and/or decisions that resulted in the actions which the court finds improper under

[FRCP] 11."  *Indep. Fire Ins. Co. v. Lea*, 979 F.2d 377, 379 (5th Cir. 1992); *see also In re*

*Motion for Sanctions Against Meyers*, No. 4:12-MC-015-A, 2014 WL 1494099, at *9–10 (N.D.

---

[43] *See* Rule 9011(a)–(b).

11

Tex. Apr. 16, 2014) (ordering sanctions against the attorney and her clients when bad-faith litigation was urged by the clients despite warnings by opposing counsel).

7.   The Court has "considerable discretion" in determining the appropriate sanction to impose for FRCP 11 violations.  *Worrell v. Hous. Can! Acad.*, 287 F. App'x 320, 326 (5th Cir. 2008); *Thomas*, 836 F.2d at 876–77.  When fashioning a sanction, the Court should keep in mind the limits of Rule 9011 itself.  "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Rule 9011(c)(2); *see also Thomas*, 836 F.2d at 877–78 (advising "that the least severe sanction adequate to serve the purpose should be imposed.").  Rule 9011(c)(2) lists several modes of sanction that can substitute for monetary sanctions; however, monetary sanctions are permitted if "imposed on motion and warranted for effective deterrence."

8.   At the hearing, Adams testified that he was lead counsel for Artho, and Olson testified that he assisted Adams with the bankruptcy-specific portions of the litigation.  Olson further testified that he drafted not more than one section of the response to the motions to dismiss—the section that dealt with res judicata and claims reservation in Artho's Plan—and which he reasonably believed alleged valid arguments against the defenses raised by Defendants.

9.   Olson was the bankruptcy expert in this litigation and nothing more.

10. Adams and Olson made a joint appearance in this adversary on April 28, 2017.[44]

11. Olson's signature appears on each of the substantive pleadings, including the amended complaint and the responses to Defendants' motions to dismiss.[45]

12. Notwithstanding his intentions, by signing the pleadings, Olson certified to the best of his knowledge that the pleadings complied with Rule 9011(b)(1)–(4).

---

[44] Doc. No. 20.
[45] *See* Doc. Nos. 28, 53, 54, 62.

13. The timeline of events is important:

- The adversary was originally filed on February 8, 2017, by Meagan Martin and Rachel Khirallah, Artho's prior attorneys, and against HSB alone.[46]

- HSB filed its original motion to dismiss and answer on March 23, 2017.[47]

- On April 26, 2017, Martin and Khirallah requested that Adams and Olson be substituted as counsel for Artho.[48]

- Adams and Olson then filed an amended complaint against Defendants on May 31, 2017.[49]

- Defendants filed their motions to dismiss on July 12, 2017.[50]

- The motions were heard on September 15, 2017.

- Prior to the hearing, HSB sent its first letter to Adams and Olson on August 16, 2017, requesting that the case be voluntarily dismissed.[51] Included with this letter was a proposed motion for sanctions.[52]

- While the motions to dismiss were pending, Artho's deposition was taken on February 13, 2018.[53] After concluding the deposition, HSB sent another letter to Adams (with Olson copied) on February 15, 2018, demanding the case be dismissed to avoid incurring more attorneys' fees.[54]

- The Court's Memorandum Opinion and its order dismissing Artho's claims were entered on March 30, 2018.

- The Burdett Defendants also sent a letter to Adams (with Olson copied) on February 16, 2018, demanding dismissal to avoid filing a motion for sanctions to recoup their separate attorneys' fees.[55]

---

[46] Doc. No. 1.

[47] Doc. Nos. 5, 7.

[48] Doc. No. 14. An order was entered granting the substitution on April 27, 2017. Doc. No. 17.

[49] Doc. No. 28.

[50] Doc. Nos. 41, 43.

[51] Doc. No. 102 at 28.

[52] *Id.* at 31–43. It is unclear why this motion was not filed prior to the September 15, 2017 hearing. The 21-day "safe harbor" period of Rule 9011 had passed and the case was not dismissed, nor was the complaint amended. *See* Rule 9011(c)(1)(A).

[53] Doc. No. 84.

[54] Doc. No. 102 at 44. The letter did not include a proposed motion for sanctions but demanded the claims be dismissed by February 23, 2018, otherwise the parties would seek sanctions to recover attorneys' fees.

[55] *Id.* at 46–47.

- The demand letters were presented to Adams and Olson about a month and a half *prior to* the Court's entry of its Memorandum of Opinion and the Order dismissing the adversary. In that time, neither Adams nor Olson filed an amendment to the complaint or sought voluntary dismissal.

- HSB and the Burdett Defendants filed their motions for sanctions on April 16, 2018 and May 4, 2018, respectively.

14. Defendants' counsel gave Artho an ultimatum to voluntarily dismiss the adversary or risk motions for sanctions seeking to recover counsel's respective attorneys' fees. The letters allowed Artho until February 23, 2018 to dismiss, yet sanctions were not requested until after the Court entered its order dismissing the case. Adams and Olson were provided with ample time to consult with their client about the possibility of dismissing the case.[56]

15. Adams testified that he notified Artho of the letters demanding dismissal and that he discussed the content of the letters with Artho, but he does not recall his recommendation to Artho regarding the demands made. Olson testified that he did not make any recommendations to Artho after receiving the letters.

16. The Court has much discretion in determining an appropriate sanction. It can reprimand the attorney(s), order a penalty be paid to the Court, or require payment to the movants of their reasonable attorneys' fees and expenses. Rule 9011(c)(2); *see also Seawright v. Charter Furniture Rental, Inc.*, 39 F.Supp.2d 795, 808 (N.D. Tex. 1999) (publishing attorney reprimand to deter future sanctionable conduct).

17. At the hearing, counsel for HSB—with the Burdett Defendants' counsel's concurrence—stated that it was not seeking to recover its attorneys' fees as a result of the entire litigation.

---

[56] Although the Court makes no assumption as to whether this occurred or not.

14

18. Adams testified that he has been paid between $25,000 and $35,000 for a year's worth of work. He also stated that he is not aware of how much Olson was paid because Olson sent separate bills to Artho.

19. Olson testified that he has been paid $24,522.80 for his work on the case.

20. HSB's motion for sanctions requests the lesser of the amount in fees paid to Adams and Olson or $117,881.37 (HSB's fees). The Burdett Defendants make the same request (their fees are $86,912.31).

21. From the testimony, it is not clear the precise amount Adams and Olson received as compensation from Artho. Defendants, however, request that whatever amount was paid to Adams and Olson, as a result of this adversary proceeding, be paid over to them as sanctions. Defendants concede that disgorgement of Adams's and Olson's fees may not fully compensate their actual expenses. This concession is reasonable under the circumstances.

22. Both HSB's and the Burdett Defendants' motions for sanctions contain similar language. HSB's motion says:

> HSB seeks attorneys' fees and expenses against Carl David Adams, LAW OFFICE OF CARL DAVID ADAMS, and/or Dennis Olson, OLSON NICOUD & GUECK, LLP the lesser of:
> a. Disgorgement of all attorney's fees and expenses paid to them by Jerry Artho and/or Jerry Artho d/b/a Artho Cattle in this case; or
> b. Attorney's fees and expenses incurred by HSB from and after the filing of Plaintiff's First Amended Complaint [Doc. 28] on May 31, 2017 to April 12, 2018 in the sum of $117,881.37.

Doc. No. 103 at 9. The Burdett Defendants' brief in support of its motion says:

> [T]he Burdett Defendants seek attorneys' fees and expenses against Carl David Adams, LAW OFFICE OF CARL DAVID ADAMS, and/or Dennis Olson, OLSON NICOUD & GUECK, LLP the lesser of:
> a. Disgorgement of all attorney's fees and expenses paid to them by Jerry Artho and/or Jerry Artho d/b/a Artho Cattle in this case; or

b. Attorney's fees and expenses incurred by the Burdett Defendants from and after service of Plaintiff's First Amended Complaint [Doc. 28] on June 1, 2017 [Doc. 33] to May 2, 2018 in the sum of $86,912.31.

Doc. No. 115 at 26–27. These requests, however, apply only to the Court's imposition of sanctions against the attorneys. As against Artho, the Defendants request the full amount of their attorneys' fees and expenses.

23. The causes of action asserted by Artho had no factual support and thus were not warranted under law. Counsel knew this after Artho's deposition and, with reasonable inquiry, would have known this well prior to the deposition.

24. The Court will therefore issue a monetary sanction against Adams in the amount of $30,000. Such sum shall be remitted to HSB and the Burdett Defendants in proportion to the amount of fees incurred as represented by their respective motions.[57] Although Olson's role in this litigation was limited to bankruptcy issues alone, his signature on the pleadings merits an award of sanctions as well. By signing pleadings, counsel cannot turn a blind-eye to the allegations made. But the Court does consider Olson's limited involvement as a mitigating factor. The Court requires that Olson remit $4,000 to HSB and the Burdett Defendants as sanctions. The sanction shall be proportionately divided between the Defendants in the same way as is Adams's sanction. These amounts are adequate to deter similar conduct in the future.

**Artho's Liability for Sanctions**

25. Determining a party's liability for *monetary* sanctions depends on whether or not the party was represented by counsel at the time the sanctionable conduct occurred and the nature of the conduct that is sanctioned. On the other hand, *non-monetary* sanctions may be imposed against a party regardless if that party is represented by counsel or not.

---

[57] As a percentage of the total fees requested, HSB is entitled to 58% and the Burdett Defendants are entitled to 42%. These percentages are used throughout when a reference to proportional fees is made.

26. Rule 9011(c)(2)–(3) states:

> (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an[] order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
> (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
> (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
> (3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

The limitation on assessing monetary sanctions against a represented party, contained at Rule 9011(c)(2)(A) above, refers to subsection (b)(2), which in turn requires that a party's claims be warranted under existing law or by a nonfrivolous argument for a change in such law.[58] Thus, Defendants cannot, for the time period that Artho was represented by counsel, recover a monetary sanction *against Artho* for his claims that fail to meet this standard. Rule 9011(c)(2)(A); *see also Frazin v. Haynes & Boone, LLP (In re Frazin)*, No. 02-32351-bjh-13, 2017 WL 7050632, at *46 n.25 (Bankr. N.D. Tex. Dec. 22, 2017).

---

[58] (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

. . .

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Rule 9011(b)(2).

27. If the conduct sanctioned is deemed to have violated another provision of Rule 9011(b), the sanction assessed against a party may include monetary compensation, including the opposing party's attorneys' fees. *In re Hajje*, No. 04-50266-RLJ-7, 2004 Bankr. LEXIS 1659, at *16 (Bankr. N.D. Tex. Oct. 22, 2004) (assessing sanctions against the debtors for violating Rule 9011 because the conduct "was intended, at least in part, to harass or intimidate"). Accordingly, a represented party may be sanctioned for advocating a position for an improper purpose or for making allegations that are not likely to have evidentiary support. *See id.*; *In re Smith*, 111 B.R. 81, 86 (Bankr. E.D. Pa. 1990) (discussing the availability of monetary sanctions against debtor-parties).

28. Regardless of the decision to assess monetary or non-monetary sanctions against a represented party, the court should first determine the party's level of involvement in the case. A party that is more involved with the case is more likely to be subject of sanctions, as opposed to a party with less involvement.

29. As with counsel, the court may levy sanctions against a represented party "who had some direct personal involvement in the management of the litigation and/or the decisions that resulted in the actions which the court finds improper under [FRCP] 11." *Lea*, 979 F.2d at 379.

30. Pro se litigants might also be subject of sanctions for violations of Rule 9011. *E.g.*, *In re Schaefer*, 154 B.R. 227, 231 (Bankr. S.D. Tex. 1993). The absence of legal advice, however, is appropriately considered when determining the nature and severity of a sanction against an unrepresented party. *See McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448–49 (N.D. Tex. 1997) (describing the latitude provided to pro se litigants when considering sanctions and remarking that "*pro se* parties should be sanctioned only after successive attempts to press a wholly frivolous claim.") (internal quotation and citation omitted).

31. There are limits, though, to the latitude afforded to pro se litigants. *See Wells v. Louisiana*, No. 15-00598-JJB-EWD, 2016 WL 2931651, at *3 (M.D. La. Apr. 29, 2016) (recommending sanctions against a pro se litigant in spite of any "ignorance of the law or legal procedure") (citing *Kurkowski v. Volker*, 819 F.2d 201, 204 (8th Cir. 1987)). When sanctioning an unrepresented party, the court should keep in mind the purpose of deterrence to fashion a reasonable sanction based on the circumstances of the case. *Jabary v. McCullough*, 325 F.R.D. 175, 182–83 (E.D. Tex. 2018) (citing *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996)).

32. Artho was represented by counsel for the majority of his bankruptcy and the subsequent adversary proceeding.[59]

33. A finding that Artho violated Rule 9011(b)(2), while represented by counsel, limits the available sanctions to those that are non-monetary. There is, however, no similar restriction on the type of sanction available if Artho's conduct violated Rule 9011(b)(1) or (3).[60]

34. According to the Court's docket, the earliest time in which Artho's counsel ceased its representation was June 19, 2018.

---

[59] During the bankruptcy, Artho was originally represented by David Langston. Then, for a brief period, Artho was represented in the bankruptcy by Davor Rukavina. Case No. 15-20046, Doc. No. 118. Upon Rukavina's motion to withdraw and substitute counsel, Dennis Olson then became Artho's bankruptcy counsel. Case No. 15-20046, Doc. No. 126. It was not until after the Court issued its Memorandum of Opinion in the adversary that Olson requested to withdraw from his representation of Artho; the withdrawal was granted by the Court's order entered June 18, 2018. Case No. 15-20046, Doc. No. 165. In the adversary, Meagan Martin and Rachel Khirallah filed the original complaint on Artho's behalf. Doc. No. 1. By an agreed motion to substitute attorneys, Carl Adams took over as Artho's adversary counsel. Doc. No. 14. Adams and Olson were permitted to withdraw as counsel by the Court's order entered June 19, 2018. Doc. No. 136.

[60] Artho mentioned several times, both at the hearing and in his pleadings, the desire to seek retribution. When questioned by counsel for the Burdett Defendants whether he would ever cease seeking retribution, Artho responded, "no." At least an inference exists that Artho has been pursuing this litigation from its inception for an improper purpose, such as to harass HSB and the Burdett Defendants, to gain back, as he phrased it, his "net worth."

35. An argument exists, however, that Adams's and Olson's representation ended when Artho filed his motion to reconsider without the assistance of counsel.[61] This argument is particularly persuasive because Artho also filed a motion to discontinue Adams's and Olson's representation the same day he filed his motion to reconsider.

36. Artho was acting without the assistance of counsel at the time he filed the motion to reconsider and at all times subsequent.

37. There is no evidence, however, that Artho had direct, personal involvement in the litigation decisions advocated by his counsel during the time he was represented. *See Lea*, 979 F.2d at 379.

38. Artho's decision to pursue reconsideration of the Court's Memorandum of Opinion and Order of dismissal was not supported by known, or likely-to-be-discovered, evidence. Thus, the Court will require Artho to pay a sanction of $2,500. The sanction shall be proportionately divided between the Defendants to reflect the fees requested in their respective motions for sanctions. This amount is appropriate to deter repeated, future conduct by Artho.

### Application for Compensation

39. As the Supreme Court has noted, the "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)) (internal quotation omitted).

---

[61] Without the benefit of any engagement or employment letter entered into between Artho, Olson, and Adams, it is unclear if the representation ended upon the Court's granting of the Defendants' motions to dismiss. *See Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990) ("When an attorney-client relationship is established, the relation generally terminates once the purpose of the employment is completed, absent a contrary agreement.").

40. "[A] party may recover its attorneys' fees when it is authorized to do so by statute or when the parties' contract so provides." *In re 900 Corp.*, 327 B.R. 585, 593, 600 (Bankr. N.D. Tex. 2005) (noting also that § 506 "applies only from the date of filing through the confirmation date" and denying recovery of post-confirmation attorneys' fees despite the existence of a contractual provision and quoting *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'Ship (In re T-H New Orleans Ltd. P'Ship)*, 116 F.3d 790, 797 (5th Cir. 1997)) (internal quotation omitted). Deviation from the American Rule is not permitted absent explicit language to the contrary. *See Baker Botts L.L.P.*, 135 S. Ct. at 2164 (discussing departure from the American Rule in a statutory context); *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 470–71 (W.D. Tex. 2011) (deciding that a court has more equitable discretion to award attorneys' fees under a statute than under a contractual provision).

41. In addition to § 506(b), HSB relies on other Code provisions, provisions of the Plan, and case law to support its asserted entitlement to payment of its attorneys' fees.

42. Section 1203 of the Code states as follows:

> Subject to such limitations as the court may prescribe, a debtor in possession shall have all the rights, other than the right to compensation under section 330, and powers, and shall perform all the functions and duties, except the duties specified in paragraphs (3) and (4) of section 1106(a), of a trustee serving in a case under chapter 11, including operating the debtor's farm . . . .

Artho is a debtor in possession under § 1203 and is empowered with the rights and duties of a debtor in possession, including the maintenance and management of estate property.

43. Section 1207(a)(1) defines property of a chapter 12 estate to include, in addition to property held at the time the case was filed, all property acquired by the debtor "after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever occurs first." Artho's case has not been closed, dismissed, or

21

converted to chapter 7. Artho's estate, therefore, includes property he acquired since the petition

date. This includes the proceeds of the auction that were disbursed to Artho in the amount of

approximately $945,000. *See* Finding 9.

44. Under Artho's Plan, upon confirmation, all property of the estate vested in the debtor.

§ 1227(b). Subject to § 1228(a), such vesting of estate property in the debtor is "free and clear of

any claim or interest of any creditor provided for by the plan." § 1227(c). And thus the terms of

the Plan govern the extent to which such property is subject to the claims of secured creditors.

*See In re Smith*, 514 B.R. 464, 472 (Bankr. N.D. Tex. 2014).

45. A secured creditor retains a postpetition security interest in proceeds of collateral that

were secured by a prepetition security interest if such security interest so provided that it also

applied to proceeds of the collateral. § 552(b)(1).

> For a pre-petition security agreement to attach to after-acquired property, a creditor
> must show the following: 1) the security agreement extends to the after-acquired
> property upon which the creditor seeks the lien, and 2) the after-acquired property
> is proceeds, product, offspring, rents, or profits of pre-petition property subject to
> the lien.

*In re Cafeteria Operators, L.P.*, 299 B.R. 400, 405 (Bankr. N.D. Tex. 2003). The proceeds paid

to Artho from the auction are proceeds of the property covered by HSB's security interests.

46. The proceeds that were distributed to Artho are not subject to subsequent claims of HSB.

The Plan specifically provided for HSB's secured claim. It states, "The Debtor intends . . . to

pay the total amount of HSB's claim in full . . . . The Debtor will make the payment to HSB to

extinguish its indebtedness directly from the proceeds of the sale paid at closing."[62] The only

provision of the Plan that granted lien retention is ¶ 10.01(a), which states, "the Debtor may not

obtain a discharge on any secured Claim which has a remaining balance owing [sic] after

---

[62] HSB-BMWB Ex. 18 at 18.

completion of all payments under the Plan."[63] The report of Artho's sale of the real property and distribution of proceeds that was approved by the Court's order—the same order that precluded Artho from asserting claims of misconduct at the auction—plainly states that HSB was paid $1,617,580.75 and that such payment was made in full.[64] Thus, HSB's lien is not retained by ¶ 10.01(a) of the Plan because there was no balance owing to HSB after funds were distributed under the Plan's terms. And counsel for HSB represented that it collected attorneys' fees from the auction proceeds on September 29, 2015.[65]

47. HSB relies on *In re Pan American General Hospital, LLC* to support its position that it is entitled to post-auction approval of attorneys' fees. 385 B.R. 855 (Bankr. W.D. Tex. 2008). But *Pan American* is distinguishable. First, *Pan American* dealt with a secured creditor that was undersecured in a prior bankruptcy, and then oversecured in a subsequent bankruptcy on account of an auction sale "that yielded a better than originally anticipated outcome." *Id.* at 858. Here, HSB is an oversecured creditor that accepted the terms of the Plan that called for an auction of its collateral, the proceeds of which were used to pay its claim in full. Second, the first plan in *Pan American* explicitly preserved the secured creditor's right to exercise the ordinary covenants of its security agreement, including the right to seek attorneys' fees in the event of default by the debtor. *Id.* at 866–67. Notwithstanding the obvious point that Artho did not default under the Plan's terms, Artho's Plan also does not make a similar provision for HSB; rather, ¶ 8.04 specifies a creditor's remedies in the event of default and allows the creditor to seek appropriate relief from the bankruptcy court.[66]

---

[63] *Id*. at 24.
[64] HSB-BMWB Ex. 19 at 3; HSB-BMWB Ex. 20.
[65] HSB-BMWB Ex. 1 at 3.
[66] HSB-BMWB Ex. 18 at 23.

48. The Court is likewise unpersuaded by its holding in *In re Buchanan Land & Cattle, Inc.*, No. 10-50299-RLJ-7, 2012 WL 1658296, at *1 (Bankr. N.D. Tex. May 11, 2012).  There, the secured creditor asserted an entitlement to *post-petition interest accrued and fees* incurred from proceeds of its collateral; such assertion was made after the secured creditor was paid in full what it was owed on its claim at the time the case was filed.  *Id.* at *1–2.  To that end, the chapter 7 trustee was holding funds as property of the estate that represented proceeds of the secured creditor's collateral.  *Id.* at *1.

> [T]he Court is satisfied that United, upon payment of its claim, which represented what it was owed as of the filing date of the bankruptcy, thought it was paid off. United's conduct then reflects that it subsequently realized that it was entitled to collect post-petition interest accrued and fees incurred.  This epiphany resulted in the request presently before the Court.

*Id.* at *3.  As it turned out, United was not paid off and, given the particular facts and circumstances there, the Court allowed United's claim against the funds.  Artho's case is fundamentally different.  First, all of Artho's creditors were paid in full under the Plan and the subsequent order approving disbursement of funds.[67]  Second, the present case is not one of mistaken entitlement.  HSB knew it was entitled to post-petition interest and fees on its secured claim as an oversecured creditor under § 506(b).  In fact, HSB admits to having been paid $42,292.23 on September 29, 2015 as attorneys' fees and costs.[68]  And third, there are no segregated funds being held to pay HSB's request.  When asked what was done with the $945,000 distributed to him from the auction proceeds, Artho testified that he paid about $337,000 in capital gains taxes to the IRS, over $400,000 in attorneys' fees[69], and the balance to buy land for a cattle operation.

---

[67] *See* HSB-BMWB Ex. 19.
[68] HSB-BMWB Ex. 1 at 4.
[69] Artho's claim that he paid $400,000 in attorneys' fees with, he said, the bulk going to Mullin Hoard appears to be a wild exaggeration.  The approved fees to Mullin Hoard are less than half the $400,000 amount.

49. The claims-reservation language of the Plan does not support HSB's claim. Although ¶ 10.03 reserves and retains the rights of the parties (debtor and creditors) to prosecute actions if necessary, it does not preserve HSB's lien post-payoff, award prevailing-party's attorneys' fees, or implement the terms of HSB's security agreements.[70] Section 10.03 of the Plan preserves claims, it does not create claims.[71]

50. Finally, the related security documents do not entitle HSB to collect its fees. Each security document contains typical language regarding attorneys' fees.[72] Such language, when unambiguous, is strictly construed. *See, e.g.*, *CERx Pharmacy Partners v. Provider Meds, LP (In re ProvideRx of Grapevine, LLC)*, 507 B.R. 132, 153 (Bankr. N.D. Tex. 2014). The security documents state that the holder of the security interest is entitled to collect its attorneys' fees for *collection or enforcement of the terms* of the document.[73] HSB has collected its interest. This adversary proceeding does not concern the collection of debt or enforcement of the written agreements Artho had with HSB. With Artho having fully paid the debt to HSB, the security documents do not entitle HSB to collect its attorneys' fees incurred as a result of the claims here.

51. Under the American Rule, each party pays his own attorneys' fees, "win or lose." Section 506(b) allows an *oversecured* creditor to recover fees from a bankruptcy estate (the debtor) if such right is provided for by agreement or state statute. And such right—under either an agreement or statute—must be explicit. Neither the Plan nor the security instruments explicitly allow HSB to recover fees for *defending* the causes of action made by Artho. The bank's debt had been paid off. The Plan stated that such payment was *not* subject to disgorgement. And the general reservation language cannot be fairly construed to grant such a

---

[70] HSB-BMWB Ex. 18 at 25.
[71] *See* Doc. 88 at 10–12.
[72] *See* HSB-BMWB Exs. 3, 4.
[73] *Id.*

right. That funds received by Artho after the confirmation are estate property does not bolster HSB's argument. Last, the security instruments do not cover fees incurred for defending Artho's lawsuit, which in effect sought damages for HSB's alleged misdeeds.

52. HSB is not entitled to compensation for the requested time period, September 29, 2015– May 10, 2018.

### Other Matters

53. The issues here raise mixed questions of fact and law. Accordingly, where appropriate, findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

54. The Court will enter contemporaneous orders in accordance with these findings of fact and conclusions of law.

### End of Memorandum Opinion ###